**Barbara FAUGHENDER, Plaintiff–Appellant,**

v.

**CITY OF NORTH OLMSTED, OHIO; and M. Yvonne Petragic, Mayor of the City of North Olmsted, Defendants–Appellees.**

No. 90–3107.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 6, 1990.

Decided March 13, 1991.

Robert J. Fogarty, Steven A. Goldfarb (argued), Hahn, Loeser & Parks, Cleveland, Ohio, for Barbara Faughender.

Jeffrey W. Van Wagner, Ulmer & Berne, Cleveland, Ohio, James M. Dubelko, Michael R. Gareau (argued), North Olmsted, Ohio, for City of North Olmsted.

Thomas A. Dugan, Ulmer & Berne, Cleveland, Ohio, for M. Yvonne Petragic.

John E. Gotherman, Calfee, Halter & Griswold, Cleveland, Ohio, Stanley J. Dobrowski, Calfee, Halter & Griswold, Columbus, Ohio, for The Ohio Mun. League, amicus curiae.

Before GUY and BOGGS, Circuit Judges, and BERTELSMAN, District Judge.*

BOGGS, Circuit Judge.

This case requires us to revisit the question of when the first amendment's guarantee of freedom of speech prevents a city from firing or refusing to hire a non-civil service employee for political reasons. Barbara Faughender appeals from a grant of summary judgment for the defendants on her state and federal claims arising out of the refusal of the new mayor of North Olmsted, Ohio, Yvonne Petragic, to reappoint her as secretary to the Mayor. Faughender sued in district court, alleging that the city violated 42 U.S.C. § 1983 by denying her government employment because of her political beliefs and associations, in violation of the first amendment. Her suit also alleged three state-law claims arising out of the same refusal to hire her; breach of an employment contract, promissory estoppel, and discharge in violation of public policy. For the reasons that follow, we affirm the grant of summary judgment on her first amendment claim and reverse the grant of summary judgment on her state-law claims.

I

A

Faughender first began work for the city of North Olmsted in 1981. She answered an ad in the Cleveland *Plain Dealer* for the position of secretary to the Safety Director, Gene Petry. Her appointment appears to have been entirely based on merit, although she did receive a recommendation from the Mayor of Faughender's home town, the nearby city of Olmsted Falls. Her duties for Petry involved typing and filing, and there is no proof that she was involved in any political or policy decisions while she was Petry's secretary.

* The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

In 1983, Petry asked Faughender to take the job of secretary to the mayor. This job became available because then-Mayor Robert Swietyniowski ("the Mayor") was marrying his prior secretary, an act which caused much commotion in North Olmsted and ultimately caused the Mayor to lose his bid for re-election in 1985. Faughender was initially reluctant to enter into this squall, but finally took the job. The job of secretary to the mayor is not subject to civil service protection.

The Mayor lost his bid for re-election in the Democratic primary in 1985. The ensuing Democratic nominee lost to the ultimate winner, Republican Yvonne Petragic. Faughender was personally informed shortly after the election by Petragic that her services would no longer be required. While Petragic denies that she refused to hire Faughender because she supported the Mayor's re-election, Petragic admits that she told Faughender that part of the reason she would not be rehired was because she was friends with the Mayor's new wife. Petragic stated in her deposition that she intended to use her secretary as a close confidante and ask her for advice on pending matters. Although Faughender asked Petragic for another available non-civil service secretarial job, she has not yet received one.

## B

Faughender contends that her job as secretary to the Mayor involved no politically or policy-related duties. She alleges that she spent her time in routine secretarial work: typing, answering the phone line used by the public, filing and copying. She alleges that confidential and otherwise political materials were typed and processed by the Mayor's administrative assistant, Mary Slama. Faughender contends that she did not attend meetings held in the Mayor's office between the Mayor and the Democratic members of the city council. She also contends she was not otherwise given access to the Mayor's political or private meetings. None of the parties refer to a formal job description for the position of secretary to the mayor.

Faughender's claims are partially supported by Mayor Swietyniowski's deposition testimony. The Mayor clearly stated that the job of mayor's secretary was political, and that he wanted someone with a political background to fill the job. In addition to the duties which Faughender described herself as performing, the Mayor said she was privy to political information and participated in some, but not all, of his political or policy meetings. The Mayor stated that he had a private telephone line which Faughender could not answer, that the files in the Mayor's office were all open for public inspection, that he had a locked desk where he could keep sensitive files, and that Slama typed his speeches and his reports to the council.

All parties agree that Faughender worked on the Mayor's re-election campaign, but there is diverging evidence on the extent of Faughender's involvement in North Olmsted politics during her tenure as secretary to the Mayor. Faughender claims that she was involved only in campaign work, stating that she did not know who the Mayor's political enemies were. She denies personally coming to the Mayor's political aid, but admits that she testified in support of the Mayor's position on a personnel matter at a council meeting. She denies knowing in advance that a political fight over that matter was brewing that would require her testimony.

## II

We review a district court's grant of summary judgment under a *de novo* standard of review. *E.E.O.C. v. University of Detroit*, 904 F.2d 331, 334 (6th Cir.1990). We examine the grant of summary judgment to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir.1989) (citation omitted). Although we must draw all justifiable inferences in favor of the non-moving party, *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106

S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), there must be a disagreement regarding an item of *material* fact. *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986). The evidence presented must be sufficient to permit the plaintiff to recover if accepted by the jury.

### III

### A

We examine Faughender's claim in light of three Supreme Court decisions holding that a governmental unit violates the first amendment if it makes certain personnel actions for political reasons. The Court first considered this question in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The court in *Elrod* held that a governmental unit violated the first amendment by installing a traditional patronage system of government employment, wherein every government employee not covered by civil service could be fired for strictly political reasons. There was no majority opinion, but the opinion for the plurality stated that politically-motivated firings violate the first amendment by restraining the freedom of the fired employee to hold whatever political beliefs he desires, and to associate with others to advance those beliefs. *Elrod,* 427 U.S. at 355–60, 96 S.Ct. at 2680–83. It stated that a government could constitutionally fire an employee for political reasons, however, if the government could demonstrate that a "vital government end" would be achieved by means " 'closely drawn to avoid unnecessary abridgement....' " *Elrod,* 427 U.S. at 363, 96 S.Ct. at 2684–85 (citation omitted). It also stated that governments have a vital interest in ensuring that "representative government not be undercut by tactics obstructing the implementation of policies of the new administration," *Elrod,* 427 U.S. at 367, 96 S.Ct. at 2687, but that this interest extended only to "confidential" employees in "policymaking positions" because such a limitation was the least restrictive means of achieving the government's legitimate interest in patronage dismissals. *Elrod,* 427 U.S. at 372, 96 S.Ct. at 2689.

The Court affirmed and clarified its holding in *Elrod* in *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). The Court majority in *Branti* reaffirmed the holdings of the *Elrod* plurality that patronage dismissal violated the first amendment, and that permitting politically-motivated dismissals of persons in certain politically sensitive positions is necessary to uphold a vital governmental interest. *Branti,* 445 U.S. at 513–16, 100 S.Ct. at 1292–94. The Court in *Branti,* however, reformulated the scope of permissible patronage. The *Branti* Court held that "the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti,* 445 U.S. at 518, 100 S.Ct. at 1295.

In its last term, the Court eliminated any thought that the dictates of *Elrod* and *Branti* would be limited to firings. In *Rutan v. Republican Party of Illinois,* — U.S. ——, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), the Court upheld the rationale of both *Elrod* and *Branti,* and extended their reach to other common varieties of patronage preferment: hirings, transfers, promotions, and recalls from layoffs.

### B

We must therefore examine Faughender's claim to determine if she has presented evidence which, if true, could support her claim that her dismissal from employment by the City of North Olmsted violated the Supreme Court's holdings in *Elrod,* *Branti,* and *Rutan.* The district court gave two reasons for holding that she did not meet her burden. First, the court held that Faughender's claims are not cognizable under the foregoing precedents because she was not "fired": rather, she was not rehired. Second, the court held in the alternative that the position of secretary to the mayor is a "confidential" one, and therefore subject to politically-motivated firing under *Elrod.*

We agree with Faughender that the reasons given will not support the dismissal of

Faughender's suit. Nonetheless, we uphold the district court based on our prior decision in *Williams v. City of River Rouge,* 909 F.2d 151 (6th Cir.1990). *See Russ' Kwik Car Wash v. Marathon Petroleum Co.,* 772 F.2d 214 (6th Cir.1985) (appellate court must affirm the district court "if correct for any reason, including a reason not considered by the lower court").

■ The first reason given was incorrect because a failure to rehire is treated no differently than a firing under *Elrod* and *Branti. Branti,* 445 U.S. at 512 n. 6, 100 S.Ct. at 1291; *Christian v. Belcher,* 888 F.2d 410, 415 (6th Cir.1989). In addition, the Supreme Court has now ruled conclusively in *Rutan* that *Elrod* and *Branti* also apply to hiring decisions.

The second reason oversimplifies the test by which the constitutionality of patronage dismissals are measured. The Court in *Branti* stated that the "ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether ... party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti,* 445 U.S. at 518, 100 S.Ct. at 1295. By declaring Faughender's position to be "confidential" based on its close working relation with the mayor's office, the district court failed to closely examine the actual duties and the political requirements, if any, of her position as required by *Branti.*[1]

■ We nevertheless uphold the district court's grant of summary judgment because we believe that our holding in *Williams* mandates affirmance. We held in *Williams* that a court must examine the "position ... itself, rather than the position as performed by [the plaintiff]," *Williams,* 909 F.2d at 155, when determining whether political beliefs are an appropriate requirement for the position. *Accord Tomczak v. City of Chicago,* 765 F.2d 633 (7th Cir.),

*cert. denied,* 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289 (1985); *Jimenez–Fuentes v. Torres–Gaztambide,* 807 F.2d 236 (1st Cir. 1986) (en banc), *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987); *Brown v. Trench,* 787 F.2d 167 (3d Cir. 1986); *Stott v. Haworth,* 916 F.2d 134 (4th Cir.1990). *See, e.g., Monks v. Marlinga,* 923 F.2d 423 (6th Cir.1990) (unpublished opinion) (*Williams* approach followed in *Elrod/Branti* case). To determine whether political considerations are appropriate in making personnel decisions for a certain position, we must examine the inherent duties of that position *and* the duties that the new holder of that position will perform. A plaintiff's failure to meet either part of this test would cause the claim to be dismissed. Faughender's claim fails under either part; the duties of a mayor's secretary are inherently political, and the duties as Petragic envisions them are also inherently political.

Faughender's evidence, taken in the light most favorable to her, merely shows that *she* may not have performed political or policy-oriented tasks as secretary to the Mayor. It does not show that the position of secretary to the mayor is inherently unpolitical. Indeed, how could she show that? The mayor of a city is the supreme administrative agent of the government, clearly a policymaker of the highest order. In those cities where the mayor also sits on the City Council, the mayor also has wide-ranging legislative powers. All of these duties require communication with subordinates or other political actors, and most of those communications can be efficiently handled only through the mayors' office. Therefore, the inherent duties of a mayor's secretary can be summarized as follows: A mayor's secretary must undertake those functions in relation to the flow of information, whether by writing, speech, or personal visit, to and from the mayor's office,

1. The Court noted the tension between the two formulations of the test whereby politically-motivated firings are examined in footnote 5 of *Rutan.* However, the Court did not purport to overrule or amend its wording in *Branti,* saying merely that "[t]he scope of this exception does not concern us here as respondents concede that the five employees who brought this suit are not within it." *Rutan,* 110 S.Ct. at 2735. We are therefore confident that the Court's pronouncement in *Branti* is still good law.

that the mayor wants the secretary to perform.

A particular secretary's duties may be circumscribed, but the function of the office is constant. As political action cannot occur without communication, a position that controls the lines of communication of a political actor must be inherently political. Viewed in its functional aspect, a mayor's secretary is clearly the type of position that involves access to confidential and political material, and political loyalty, whether partisan or personal,[2] is an essential attribute of the job.

Other circuits agree that secretaries to policymakers may be fired for political reasons. The Second Circuit has held that a secretary to a policymaker may be fired for political reasons, *Savage v. Gorski,* 850 F.2d 64 (2d Cir.1988), while the Seventh Circuit has noted in dicta that secretaries to policymakers may be fired for political reasons. *Soderbeck v. Burnett County, Wisc.,* 752 F.2d 285 (7th Cir.), *cert. denied* 471 U.S. 1117, 105 S.Ct. 2360, 86 L.Ed.2d 261 (1985); *Meeks v. Grimes,* 779 F.2d 417 (7th Cir.1986).

Faughender's claim would also fail even if no secretary to the mayor in North Olmsted had ever performed political tasks. It is undisputed that Petragic wants *her* secretary to be an integral part of her administration. Faughender does not claim that Petragic's views are merely a ploy to secure dismissal of this suit, and that Petragic's secretary is not actually her confidante. In the absence of such evidence, *Williams* clearly prevents Faughender from recovering on her § 1983 claim. Williams, like Faughender, had been fired after the incumbent mayor that he supported lost a bid for re-election. Williams had been a part-time City Attorney, but the new mayor, Daniel Cooney, wanted to make the City Attorney's job a full-time position. *Williams,* 909 F.2d at 152–53. As we held

that Mayor Cooney was entitled to bestow new, politically-significant duties upon staff positions according to his wish, *Williams,* 909 F.2d at 155, so too must Mayor Petragic be permitted to make the same organizational choices without running afoul of the first amendment.

■ We emphasize that this part of our examination is not dependant upon the inherent nature of the position being altered. For example, both Williams and Faughender held inherently political positions that, examining the facts most favorably to them, neither party was performing in a political fashion. Our decision that administrative officials entrusted by the people with executive power may reorganize their departments without running afoul of *Elrod, Branti,* and *Rutan* applies to all positions, whether or not their prior duties were political. A mayor could decide to transform any non-civil service position into a position for which political considerations are appropriate provided he acts with a good faith belief that such a transformation is necessary to implement his policies. Of course, the opposite decision to transform a political position into one with no political considerations is also not a violation of the first amendment.

### C

Our test is firmly rooted in *Elrod* and *Branti.* Examining the nature of the position rather than the actual work performed by the plaintiff is the prevailing view among the circuits when determining whether the narrow "appropriate requirement" exception applies. It is also the approach that the Court used in *Elrod* and *Branti* in theory and in practice.

*Elrod's* holding that some patronage decisions are consistent with the first amendment rests theoretically on the notion that some public jobs are political by nature,

---

**2.** Any reference to "political" motivations should not be read as synonymous with partisan political motivations. As we noted in *Williams,* "the reasoning of the Supreme Court in [*Branti*] has been understood to apply to political differences of any kind, not merely differences in party membership." *Williams,* 909 F.2d at 153

n. 4. In this case, it is mere coincidence that Swietyniowski was a Democrat and Petragic a Republican. The political motivations underlying this case are personal, not partisan, but this does not remove them from examination under *Branti.*

regardless of the duties actually performed by the plaintiff. The *Elrod* plurality stated that patronage dismissals are permissible only when they serve the limited purpose of ensuring that governmental policies are faithfully implemented. Thus, some public employees may be fired constitutionally for strictly political reasons, while others cannot. In determining whether a particular public employee may be fired constitutionally for political reasons, the *Elrod* plurality could have required a showing that each person whose dismissal was sought had performed duties that demonstrated the employee was unlikely to implement faithfully the new, electorally-sanctioned governmental policies. They did not choose this path.

Instead, the *Elrod* plurality found that governments need only show that the person subject to dismissal occupied a position that would permit obstruction of policy implementation. "Limiting patronage dismissals to policymaking *positions* is sufficient to achieve this governmental end." *Elrod,* 427 U.S. at 367, 96 S.Ct. at 2687 (emphasis added). In so finding, the Court did not presume that an employee's prior duties had no bearing on the inquiry. However, those duties were viewed merely as a way to gather evidence that the person's position was one affecting policy.

> In determining whether an employee occupies a policymaking *position,* consideration should *also* be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals. Thus, the political loyalty "justification is a matter of proof ... directed at *particular kinds of jobs.*"

*Elrod,* 427 U.S. at 368, 96 S.Ct. at 2687 (emphasis added) (citation omitted).

The Court in *Branti* ratified the approach of the *Elrod* plurality. The *Branti* majority also rested its theoretical explanation of the "appropriate requirements" on the governmental position involved instead of the actual duties previously performed by the plaintiff. The *Branti* majority explained that *Elrod* found that "party affiliation may be an acceptable requirement for some *types* of government employ-

ment." *Branti,* 445 U.S. at 517, 100 S.Ct. at 1294 (emphasis added). It held specifically that a defendant must justify a patronage dismissal by showing the appropriateness of political beliefs for "the public *office* involved." *Branti,* 445 U.S. at 518, 100 S.Ct. at 1295 (emphasis added).

The *Branti* Court went on to examine the duties of an assistant public defender in the abstract in its determination that dismissing the plaintiffs for political reasons violated the first amendment. The Court never examined the duties of the plaintiffs, Finkel and Tabakman, in deciding they were protected. Rather, the Court stated that:

> "The primary, if not the only, responsibility of an assistant public defender is to represent individual citizens in controversy with the State.... Under these circumstances, it would undermine, rather than promote, the effective performance of an assistant public defender's office to make his tenure dependent on his [political beliefs]."

*Branti,* 445 U.S. at 519–20, 100 S.Ct. at 1295.

Permitting elected officials entrusted with administrative duties to reorganize their staffs according to their wishes is also derived from *Elrod* and *Branti.* The only reason that governments may consider any political factor when making employment decisions is that failure to permit such consideration would, with respect to some positions, disturb the ability of the people's representatives to implement policies. *Elrod,* 427 U.S. at 367, 96 S.Ct. at 2687; *Branti,* 445 U.S. at 517, 100 S.Ct. at 1294. It should be clear that policies can only be implemented with the help of staff persons entrusted to carry out certain tasks. A newly-elected administration is surely hampered in implementing its new policies if it cannot change a position's responsibilities solely because the current incumbent does not now perform the new duties. To hold otherwise would be contrary to the recognized exception to the first amendment's general bar on using political motivations to govern employment decisions affecting public employees.

D

Faughender contends that our decision should not be governed by *Williams*, but by one of our unpublished decisions. In *Crumbley v. Swietyniowski*, 828 F.2d 19 (6th Cir.1987), we refused to overturn a jury verdict permitting Minnie Crumbley to recover back pay and damages and ordering her reinstatement, for being fired for political reasons from her position as secretary to the Service Director of North Olmsted. Crumbley had originally been a supporter of the Mayor, but became an opponent during the period when the Mayor was marrying his previous secretary. Crumbley spoke against readmitting the Mayor as a member to the North Olmsted Democratic Club, and was fired shortly thereafter by the Service Director. *Crumbley*, Nos. 86–3531, 86–3693, 86–4058, slip. op. at 2 [828 F.2d 19 (table)].

We hold that *Williams* rather than *Crumbley* governs our decision for two reasons. First, *Williams* is factually on all fours with Faughender's situation, while *Crumbley* is not. Both Faughender and Williams reported to the mayor; Crumbley reported to a city director with more limited policy-making powers. Both Faughender and Williams were fired after the mayor lost his office; Crumbley was fired in the middle of her tenure. The new mayor in both Faughender's and Williams's cases wanted to reorganize the duties of certain staff positions; Crumbley's boss had no such intention for her position. To hold that *Crumbley* governs Faughender's case rather than *Williams* in light of the foregoing factual similarities would contradict the approach we used in *Williams* to determine whether political considerations were appropriate for a particular position. We decline to do that.

Second, the duties of a secretary to a mayor are much easier to categorize than those of a secretary to a city director. While it is clear that the secretary to a mayor cannot be wholly divorced from politically sensitive information, a secretary to a director may be. A "service director" need not be an inherently political position, and therefore the director's secretary also need not be an inherently political position. Accordingly, permitting the jury to hear the particulars of Crumbley's claim was the only proper way to determine what the duties attendant to her position were. The jury's finding that Crumbley's firing was unconstitutional implies a finding that the position of secretary to the Service Director was not an inherently political position.

IV

■ Faughender also contends that the City was required under *Elrod* to place her in another non-civil service position in lieu of firing her. She reaches this conclusion by noting that the *Elrod* plurality states that wholesale patronage dismissals are not constitutional because they are not the "least restrictive means" to foster the government's legitimate end in efficiently implementing governmental policies. *Elrod*, 427 U.S. at 372, 96 S.Ct. at 2689. She interprets this to mean that a government must employ a less restrictive alternative to dismissal if it has such an opportunity. Faughender has produced evidence that suggests that the city had positions available to which it could have transferred her.

Faughender's contention misreads *Elrod* and is contrary to *Rutan*. Nowhere in either *Elrod* or *Branti* does the Court intimate that a government is required to use less restrictive means than dismissal. The Court merely upholds the use of politically-motivated dismissals in those circumstances where they are the least restrictive way of achieving efficient implementation of governmental policies.

Any doubt about this should be dispelled by *Rutan*. *Rutan* specifically holds that the use of political considerations in transferring, hiring, promotions, or recalling non-political personnel violates the first amendment. Yet, this is exactly what Faughender wants us to sanction. Faughender's "least restrictive means" must either be a transfer to another job in North Olmsted, or preference in hiring for a new city job. Faughender is therefore asking the city to take her political beliefs—that she opposed the new administration—into con-

sideration when deciding how to fill these new positions. This is precisely the sort of consideration that *Rutan* proscribes.

These considerations would be constitutional only if the new or available jobs were political in nature. But they cannot be political, because Faughender under this argument concedes that the city is permitted to remove her from her current political job. If the city could constitutionally remove her from one political job, it cannot be constitutionally obligated to place her in or give her preference for another political job. They must therefore be non-political jobs.

We can see the incoherence of Faughender's argument if we examine what would happen to the applicants rejected by the city in deference to Faughender. They would have been denied a job, or been refused a transfer, because of another person's political beliefs. Faughender's claim would require the city to give her preferential treatment for a non-political job because sometime in the past Faughender constitutionally received a preference for an inherently political job. It is precisely this evil, conditioning non-political public jobs upon adherence to a set of political beliefs, that *Elrod, Branti,* and *Rutan* hold the first amendment forbids.

We note that Faughender has not been rejected for a civil service position because of her political beliefs and associations. Indeed, the record does not show that she has ever applied for a civil service job with the city. Nothing in this decision removes any right that she has to apply for such a job, and the city clearly cannot discriminate against her for political reasons if she does apply for a civil service job.

## V

■ The district court dismissed Faughender's three state law claims with prejudice, even though the defendants made no motion for summary judgment on these claims. While Faughender argues that this ruling is incorrect because *sua sponte* summary judgment can be effected only after the court affords sufficient notice and opportunity to respond to the non-moving party, the district court's judgment can be dismissed on less complicated grounds. The district court exercised jurisdiction over the state law claims solely by virtue of pendant jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). "Since the federal claims have been dismissed prior to trial, the state claims should also be dismissed *without* reaching their merits." *Valente v. Moore Business Forms,* 596 F.Supp. 1280, 1290 (D.Vt.1984) (emphasis supplied). *See also Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139; *Williams,* 909 F.2d at 157. As the reasons for affirming the district court have no bearing on Faughender's state claims, the district court's grant of summary judgment on them should be reversed.

## VI

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment with respect to Faughender's § 1983 claim. We REVERSE the district court's grant of summary judgment on the state claims, and REMAND the case to the district court with instructions to dismiss Faughender's state claims without prejudice.

BERTELSMAN, District Judge, concurring.

I am in agreement with Judge Boggs' excellent opinion except for one point. That is, I disagree that the trial judge was in error when he relied on a confidential employee exception, since this case involves a member of the personal staff of a policy-making public official.

In my view, such an exception is well-established in the precedents of this court and other circuits. Nor is it contrary to the holdings of the Supreme Court precedents cited by Judge Boggs. The Supreme Court cases did not involve personal staffs, and I do not believe the Court had a confidential secretary or assistant to a policy-making official in mind in rendering these decisions.

The opinion of this court in *Balogh v. Charron,* 855 F.2d 356 (6th Cir.1988) (affirming Judge Cohn's opinion reported at

666 F.Supp. 987 (E.D.Mich.1987)), expressly recognized the confidential employee/personal staff exemption relied on by the earlier opinion of the trial judge in the instant case.

In *Balogh*, this court, speaking through now Chief Judge Merritt, held that the bailiff to a state court judge could be discharged by a newly elected judge on the basis of a confidential employee exception to the political patronage rule. The court defined the parameters of the confidential employee exception as follows:

"The test of confidential employment does not depend on the subjective view of the employee concerning the trust the judge reposes in him, nor does it depend on the subjective view of the judge concerning the need for intimacy or trust. It is a more objective standard. It depends on the function of the job. Judicial aides who work in chambers and are assigned to one judge as court officer, bodyguard and general assistant normally handle sensitive information about cases of a confidential nature, information which is not public information. Judges must be able to rely on the confidentiality of the relationship with such aides, just as they must rely on the confidentiality of their relationship with their *private secretaries* and law clerks. The need for confidentiality between a judge and the staff in his immediate chambers is no less necessary than the need for confidentiality between legislators and their aides."

855 F.2d at 356–57 (emphasis added); *see also Williams v. City of River Rouge*, 909 F.2d 151 (6th Cir.1990); *Monce v. City of San Diego*, 895 F.2d 560 (9th Cir.1990); *McDaniel v. Woodard*, 886 F.2d 311 (11th Cir.1989); *Vazquez Rios v. Hernandez Colon*, 819 F.2d 319 (1st Cir.1987); *Raffucci Alvarado v. Sonia Zayas*, 816 F.2d 818 (1st Cir.1987); *Donlin v. Watkins*, 814 F.2d 273 (6th Cir.1987).

Also, I believe that the comments of the court in *Connick v. Myers*, 461 U.S. 138, 151–52, 103 S.Ct. 1684, 1692, 75 L.Ed.2d 708 (1983), are applicable, although made in another context.

"When close working relationships are essential to filling public responsibilities, a wide degree of deference to the employer's judgment is appropriate."

In summary, I believe there is ample authority and policy support for recognizing the "confidential employee" exception employed by the trial court.