**Henry L. HUNTER, et al., Plaintiffs,**

v.

**Jerry WRAY, et al., Defendants.**

No. C2–93–938.

United States District Court,
S.D. Ohio,
Eastern Division.

Sept. 13, 1995.

Jeffrey Michael Silverstein, Dayton, OH, for plaintiffs.

Patricia S. Esham, Assistant Attorney General, Marion H. Little, John W. Zeiger & Daniel R. Mordarski, Zeiger & Carpenter, Columbus, OH, for defendants.

## OPINION and ORDER

BECKWITH, District Judge.

Plaintiffs, three former Labor Relations Officers ("LROs") for the Ohio Department of Transportation ("ODOT"), sue ODOT and its director, Jerry Wray. Plaintiffs allege that Defendants terminated their employment, on the basis of their political affiliation, in violation of the First Amendment to the United States Constitution. This matter is now before the Court on Defendants' motion for summary judgment.

## Background

Plaintiffs were hired or promoted to the LRO position during the administration of Richard Celeste. After the election of Governor George Voinovich, each of the Plaintiffs was dismissed from employment. Plaintiffs claim that they were dismissed because of their affiliation with the Democratic Party and activities on behalf of Democrats who were seeking political office.

The LRO position is described as follows, or similarly, in the position description prepared by the Ohio Department of Administrative Services:

Advises & consults with management staff regarding policies & procedures as they apply to all labor relations activities within assigned geographical district. Makes recommendations as to particular action to take regarding application of current contracts & relevant labor relations standards. Actively seeks information regarding conditions of employment, programs, policies & procedures to gauge mood of current labor situation. Assesses knowledge gained & draws conclusions. Apprises Administration of disposition of grievances & other labor problems to aid in effective decision making.

Researches & identifies facts at issue, endeavors to obligate both management & labor to specific terms & conditions of agreement. Regularly plans & writes labor management agreements, prepares documents, drafts information for arbitration, writes reports, writes answers to grievances, interprets contract, writes memos, communicates with union representatives.

Represents management position in adjustment of disputes between labor & management. Hears grievances, recommends solutions. Develops creditable & agreeable working relationships with all unions & organizations with whom agency deals.

Oversees & regulates activities of unions & organizations regarding solicitation, distribution & contract enforcement activities. Monitors & regulates postings & use of bulletin board facilities. Plans labor function programs for district. Conducts training for supervisors regarding Collective Bargaining Agreement. Plans, on behalf of District Deputy Director, any joint labor/management safety meetings.

The LRO works at the supervision of a District Deputy Director, who is, in turn, supervised by Defendant Wray.

Defendants deny that Plaintiffs' dismissals were related in any way to their political affiliation. Nevertheless, Defendants contend that they are entitled to summary judgment because the LRO position is one for which political affiliation is an acceptable criterion.

## Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;

the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

The Court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.*

■ The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 472, 82 S.Ct. 486, 490, 7 L.Ed.2d 458 (1962). "[T]he issue of material fact required by Rule 56(c) ... to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." *First National Bank v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.* at 323, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552. Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence. *Id.; Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.*

■ Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim. *Id.* Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits." Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

### Analysis

■ The United States Supreme Court has held that the First Amendment generally prohibits the dismissal of public employees on the basis of political affiliation. *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). That court indicated that an exception to the general rule exists in instances in which effective representative democracy permits public employers to use political affiliation as a criterion for employment in certain public offices. *Id.* at 367, 96 S.Ct. at 2686.

In *Branti v. Finkel,* 445 U.S. 507, 517–18, 100 S.Ct. 1287, 1294–95, 63 L.Ed.2d 574 (1980), the Court announced a refined test for determining when political affiliation is an appropriate criterion for employment in a public position. There, the Court stated that the test is "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.; Rice v. Ohio Department of Transportation,* 14 F.3d 1133, 1141–42 (6th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2678, 129 L.Ed.2d 812

■ A plaintiff asserting dismissal based on political affiliation must prove that the discharge was causally related to political activities. *Faughender v. North Olmsted* 927 F.2d 909, 913 (6th Cir.1991); *Conklin v. Lovely,* 834 F.2d 543, 546 (6th Cir.1987). The Supreme Court has left to subsequent courts to determine, on a case-by-case basis, whether an individual is entitled to First Amendment protection, i.e., whether political affiliation is an appropriate requirement for the effective performance of the public office in question. *Branti,* 445 U.S. at 517, 518, 100 S.Ct. at 1294, 1294; *Williams v. River Rouge,* 909 F.2d 151, 154–55 (6th Cir.1990).

■ The appropriate focus of the Court's inquiry is on the inherent duties of the position in question, rather than on the work actually performed by the most recent officeholder. *Faughender,* 927 F.2d at 913. The Court examines the duties that might be performed by the holder of the position. *Id. See also Williams,* 909 F.2d at 155.

The positions for which political affiliation may be an appropriate criterion are not limited to department directors and other high ranking officials. In *Faughender,* the United States Court of Appeals for the Sixth Circuit concluded that a suburban mayor's secretary's position was "inherently political" and that the duties, as the mayor envisioned them, were also inherently political. *Faughender,* 927 F.2d at 913. The court stated that a defendant need only · show that the position is inherently political or will become so as envisioned by the supervisor or employer in order to establish that political affiliation is an appropriate criterion. *Id.*

■ The fact that an official with hiring authority may choose not to make a hiring decision based upon political affiliation is not dispositive of the question of whether political affiliation is be an appropriate criterion. *Rice,* 14 F.3d at 1142. The test is not whether political affiliation is *essential* to the performance of the job. *Id.* Rather, the test is whether political affiliation in an *appropriate* consideration. *Id.* The issue on summary judgment is whether Defendants have established that no genuine factual issue exists as to whether political affiliation may appropriately be considered with respect to the LRO position.

■ In determining whether political affiliation is an appropriate criterion, the Court may consider the following:

(1) whether the position involves government decisionmaking on issues concerning which there may be political disagreement and

(2) whether the responsibilities of the job are such that the person holding it resembles a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that political affiliation is an equally appropriate requirement.

*Rice,* 14 F.3d at 1141, n. 7 (citing and quoting *Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d 236 (1st Cir.1986), *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987)). The Court may also consider whether the office holder acts as advisor or advocate in such a fashion that a rational connection exists between shared ideology and job performance. *Williams,* 909 F.2d at 155 (citing, *inter alia, O'Connell v. Gorski,* 715 F.Supp. 1201 (W.D.N.Y.1989)).

■ While the ultimate issue in this case is a factual one, summary judgment is, nevertheless, appropriate if the Court concludes, as a matter of law, that the LRO position is one for which political affiliation is an appropriate criterion. *See Newman v. Voinovich,* 986 F.2d 159, 163 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 3041, 125 L.Ed.2d 727 (1993). In this case, the Court concludes that no genuine issue exists as to whether

the LRO position is one for which political affiliation is an appropriate criterion. Accordingly, Defendants' motion for summary judgment is well-taken.

The Court's inquiry begins with the position description for the LRO position prepared by the Ohio Department of Administrative Services. The Court assumes that document to be a description of the inherent duties of the LRO position. The Court makes that assumption because the document was offered by Defendants as a description of the positions' inherent duties and Plaintiffs have not attempted to show that it is not.

According to the position description, the LRO's primary functions include the following:

(1) advising and consulting regarding policies and procedures as they apply to labor relations;

(2) making recommendations concerning contracts and labor relations standards;

(3) assessing knowledge gained through research concerning labor issues and drawing conclusions from that assessment;

(4) planning and writing labor management agreements, drafting information for arbitrations, writing answers to grievances, interpreting contracts, and communicating with union representatives;

(5) representing management positions in labor disputes, hearing grievances, developing a working relationship with all unions and organizations with whom ODOT deals; and

(6) overseeing and regulating the activities of unions and organizations.

The LRO position involves, therefore, decisionmaking on labor issues about which there may well be political disagreement. *See Rice,* 14 F.3d at 1141, n. 7. The LRO is charged specifically with representing the management position in labor disputes. The inherent duties of the LRO are such that the person holding that position is certain to be viewed as a policymaker. *Id.* Indeed, the individual is responsible for planning, writing, and interpreting labor management

agreements and for representing management in discussions with unions. The individual performing those functions must be viewed as a policymaker acting on behalf of ODOT and its Director. The LRO also acts as an advisor and advocate. *See Williams,* 909 F.2d at 155. According to the position description, the LRO represents management in labor disputes, hears grievances, advises management staff regarding labor policies and procedures, and interprets contracts.

Plaintiffs do not contend that their positions did not require them to advise and advocate, to be viewed as a policymaker, or to make decisions regarding issues about which there may be political disagreement. Rather, relying almost exclusively upon *Elrod v. Burns,* they argue that political affiliation is not an appropriate criterion for employee selection for the LRO position. Ignoring the instruction of the cases cited by Defendants, Plaintiffs argue simply that the cases are factually distinguishable.

Construing the evidence in the light most favorable to Plaintiffs, the Court concludes that the LRO position is one for which political affiliation is an appropriate criterion as a matter of law. Plaintiffs have offered no evidence that would tend to show that the LRO position is not inherently political. All evidence in the record indicates that the LRO position satisfies the standards enunciated by the United States Supreme Court and the United States Court of Appeals for the Sixth Circuit for a position for which political affiliation is an appropriate criterion. Accordingly, Defendants' motion for summary judgment is hereby **GRANTED.** This action is **DISMISSED.**

**IT IS SO ORDERED.**