Cynthia CUMMINGS, Plaintiff,

v.

Edward G. KILROY, et al., Defendants.

No. C-2-93-940.

United States District Court,
S.D. Ohio,
Eastern Division.

Dec. 18, 1995.

Cynthia Cummings, Dublin, OH, pro se.

Joseph Norbert Rosenthal, Ohio Attorney General, Employment Law Section, Columbus, OH, Marion H. Little, John W. Zeiger & Daniel Mordarski, Zeiger & Carpenter, Columbus, OH, for defendants.

## OPINION AND ORDER

KINNEARY, District Judge.

From May 1984 until October 1991, Cynthia Cummings, a black woman, served as the Chief Legal Counsel for the Ohio Department of Health ("ODH"). She was appointed at the beginning of the first term of Governor Richard Celeste, a Democrat, and she was terminated approximately eleven months following the election of Governor George Voinovich, a Republican.

Cummings brought this action against three people: 1) George Voinovich, Governor of the state of Ohio; 2) Dr. Edward G. Kilroy, the director of the ODH from January 1991 through July 1992; and 3) Dr. Peter Somani, the assistant director for the ODH from January 1991 through July 1992 and the director of the ODH from July 1992 to the present. Cummings contends that the defendants terminated her from her position as the Chief Legal Counsel because of her race, sex, and/or political affiliation. Accordingly, she asserts that the defendants violated 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.

Voinovich, Kilroy, and Somani have moved for summary judgment on Cummings's claims. They contend that race and sex were not factors in the decision to terminate the plaintiff and that the Constitution did not prohibit them from terminating the plaintiff for her political affiliation.

All pleadings have been filed, and the motion is ripe for review. For the reasons that follow, the Court **GRANTS** the motion and **DISMISSES** this case.

### I.

Summary judgment is appropriate only when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Kraus v. Sobel Corrugated Containers, Inc.,* 915 F.2d 227, 229 (6th Cir.1990). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in her favor. *Russo v. City of Cincinnati,* 953 F.2d 1036, 1041–42 (6th Cir.1992).

### II.

#### A. Political Affiliation

In the landmark decision of *Elrod v. Burns,* the Supreme Court announced that the politically-motivated discharge of a government employee violates the First Amendment unless the government employee's job is a policymaking position. 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *see also Branti v. Finkel,* 445 U.S. 507, 517, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980). The plu-

rality in *Elrod* articulated several relevant considerations in determining whether a job is a policy-making position:

No clear line can be drawn between policymaking and nonpolicymaking positions. While nonpolicymaking individuals usually have limited responsibility, that is not to say that one with a number of responsibilities is necessarily in a policymaking position. The nature of the responsibilities is critical. Employee supervisors, for example, may have many responsibilities, but those responsibilities may have only limited and well-defined objectives. An employee with responsibilities that are not well-defined or are of broad scope more likely functions in a policymaking position. In determining whether an employee occupies a policymaking position, consideration should also be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals.

427 U.S. at 367–68, 96 S.Ct. at 2686–87.

In *Branti* four years later, a majority of the Court stated that circumstances could exist in which a politically-motivated dismissal would be proper even "though [the employee held a position that] is neither confidential nor policymaking in character." 445 U.S. at 518, 100 S.Ct. at 1294. The ultimate inquiry is a factual one to determine "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." [1] *Id.; Rice v. Ohio Dept. of Transp.,* 14 F.3d 1133, 1139 (6th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2678, 129 L.Ed.2d 812 (1994); *see also Christian v. Belcher,* 888 F.2d 410, 416 (6th Cir. 1989) (genuine issue of material fact remains as to whether the duties of a public official made political loyalty an "appropriate" job requirement).

Descriptions of the actual duties performed by past officeholders are informative. *Peters v. Delaware River Port Auth.,* 16 F.3d 1346, 1353 (3d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 62, 130 L.Ed.2d 20 (1994).

The focus of the factual inquiry, however, is on the inherent duties of the position. *Faughender v. City of Olmsted, Ohio,* 927 F.2d 909, 913 (6th Cir.1991).

The Sixth Circuit has provided this Court with additional guidance in the area. In *Williams,* 909 F.2d 151, the Sixth Circuit found that the inherent duties in a city attorney's job, i.e.—giving legal advice, handling litigation, and prosecuting—required a relationship of trust and confidence between the city attorney, the mayor, and the city council. Because political affiliation could affect the trust and confidence, the city attorney did not enjoy First Amendment protection against politically-motivated dismissal. *Id.* at 155–56.

The next year in *Faughender,* the Sixth Circuit was asked to decide whether a suburban mayor's secretary could be terminated because of her political affiliation. 927 F.2d 909. Although the facts in *Faughender* failed to establish that the secretary had performed political or policy-oriented tasks, they did demonstrate that, in the abstract, a secretary controls the lines of communication to and from a political actor. A mayor may circumscribe a particular secretary's duties, but from a functional standpoint a secretary is generally a person who "undertake[s] those functions in relation to the flow of information, whether by writing, speech, or personal visits, to and from the mayor's office." *Id.* at 913–14. Therefore, the court held that the position "involves access to confidential and political material, and [as a result] political loyalty ... is an essential attribute of the job." *Id.* at 914.

In *Rice v. Ohio Dept. of Transp.,* the Sixth Circuit stated that the *Elrod/Branti* exception is a fairly broad one. 14 F.3d at 1141 & n. 7. The *Rice* court found that the unelected director of the Ohio Department of Transportation is a political position because: 1) he has substantial responsibility overseeing the allocation of enormous amounts of state resources and wants to see those resources allocated in ways that minimize voter dissatisfaction and; 2) there is ample room for

---

**1.** The reasoning in *Elrod* and *Branti* applies to political differences of any kind (including philosophical and ideological differences) not merely

differences in party membership. *See Williams v. City of River Rouge,* 909 F.2d 151, 153 n. 4 (6th Cir.1990).

political disagreement over how those resources should be allocated. The court then went on to find that an administrative assistant at the Ohio Department of Transportation is a political position because the administrative assistant controls the lines of communication from the public and political leaders to the department director. *Id.* at 1141. The court made this finding even though the particular administrative assistant did not actually work closely with the director; the dispositive fact was that he could have spoken directly to a deputy director. *Id.*

Applying the above case law to the facts at hand, there exists no genuine issue of material fact that political affiliation is an appropriate requirement for the effective performance as the Chief Legal Counsel for the ODH. The ODH is an administrative agency within the executive branch. It is managed by two component parts, the director and the Public Health Council. Ohio Revised Code § 3701.02 (Anderson 1995). The stated purpose of the ODH is the following:

> The Ohio Department of Health is dedicated to continual improvement of the health status of Ohioans by working to assure access to affordable, quality health care for all the state's residents. The department seeks to maximize cooperative efforts between public and private sectors in preventing disease, disability and premature death, securing a healthy environment, and assuring that health providers meet federal and state requirements. Emphasis is given to health promotion, disease prevention and health education.

(DOC. 32, Exh. 10). In a nutshell, the ODH is the chief policymaking arm of the executive branch on issues relating to health care.

As can be imagined, the director and the Public Health Council, as the managers of ODH, make controversial decisions on department policy and the implementation of policy. For example, in carrying out its duties of monitoring, regulating and developing health care policy for the state of Ohio, the ODH must develop and administer pilot programs on AIDS and HIV counseling, testing, and treatment, (*see* Ohio Revised Code § 3701.241 (Anderson 1995)), adopt and implement strict regulations on abortion reporting or counseling requirements, (*id.* at § 3701.341), and decide whether to initiate civil actions against controversial medical practitioners for violating orders or rules of the ODH. (*Id.* at § 3701.57). Accordingly, the director of the ODH and the members of the Public Health Council are political actors.

By the very nature of the office, the Chief Legal Counsel serves as the primary attorney for the ODH and its two political actors. (DOC. # 32, Exhs. 4 at ¶ 3, 7 at ¶ 3). The Celeste administration prepared a position description for the Chief Legal Counsel describing the inherent duties of the Chief,[2] and those duties include the following:

1. Analyzes and determines appropriate legal positions to be assumed by programs and divisions of the department based on state/federal laws and regulations;

2. Recommends and defends department rules and regulations which may exceed those of state and federal laws;

3. Provides direct legal counsel and advice to the director;

4. Represents the department and the director in hearings, litigation proceedings and before other state and federal officials or boards;

5. Conducts hearings and gathers evidence;

6. Personally provides verbal and written legal responses to complex and controversial issues for the director and the Public Health Council;

7. Analyzes proposed state and federal legislation and writes legal position briefs for department;

8. Drafts departmental rules and regulations for programmatic use; and

9. Recommends to the director and provides final proposals of changes in legislation.

(DOC. # 32, Exh. 9).

In sum, the Chief Legal Counsel must act as advocate, confidant, liaison, and communi-

---

**2.** Cummings does not dispute the fact that the position description describes the inherent duties of the position. She only argues that she did not actually perform many of the duties listed in the position description.

cator for both the director of the ODH and the Public Health Council; her central role is that of adviser. (*See* Doc. # 38, at 27–28 (plaintiff admitting that she advised the ODH on the substance and applicability of laws and regulations, and that, on occasion, she made recommendations on what actions should be taken by the ODH); DOC. # 32, Exh. 7 at ¶ 5). Cummings may not have served in all those roles while she was the Chief, but in the abstract, the chief legal counsel for any agency should be expected to act in those roles.

 Because of the political sensitivity of the issues on which the Chief Legal Counsel for the ODH must perform her duties, the Chief's position is a position for which political ideology is an appropriate job requirement.[3] In order to ensure that the Voinovich administration will freely rely upon the Chief Legal Counsel's services, the Governor, the director of the ODH, and the Public Health Council must be given the right to place into the position a person in whom they have the utmost trust.

Construing the evidence in the light most favorable to Cummings, the Court concludes, as a matter of law, that the Chief Legal Counsel for the ODH is a position for which

political affiliation is an appropriate criterion. Accordingly, the Court **GRANTS** summary judgment on this claim.

## B. Sex and Race Discrimination

 In her complaint, Cummings asserted that she was terminated because of her race and sex in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment to the U.S. Constitution. The defendants moved for summary judgment on these claims, but Cummings failed to respond to that portion of the defendants' motion. Accordingly, the Court **DISMISSES** these claims for the plaintiff's failure to prosecute them.[4]

This case is terminated.

**IT IS SO ORDERED.**

---

3. Cummings makes much of the fact that she was loyal to the goals of the ODH. As the Seventh Circuit has recognized, however, if the position is classified as exempt from First Amendment protection, the employee holding that position can be fired on political grounds even if there is no evidence that she would not serve her political superior loyally and competently. *Selch v. Letts,* 5 F.3d 1040, 1047 (7th Cir.1993).

4. Even if the Court were to interpret her memorandum contra as addressing that part of the defendants' motion, summary judgment would be proper. 42 U.S.C. § 1983 provides the exclusive remedy for constitutional violations by state employees. *Wynn v. Morgan,* 861 F.Supp. 622, 630 (E.D.Tenn.1994). Title VII standards controlled in this case. *See Gutzwiller v. Fenik,* 860 F.2d 1317, 1325 (6th Cir.1988). Therefore, the plaintiff had the initial burden of establishing a prima facie case for discrimination by demonstrating that she was the following: a member of a protected class; qualified for the position; discharged from the position; and replaced by a person not in the protected class. In this case, Cummings could not establish her prima facie case for sex discrimination; she was replaced by another female. (DOC. # 32, Exhs. 5 at ¶ 2, 3 at ¶ 1).

Cummings could establish her prima facie case for race discrimination, but the defendants carried their burden of production to articulate a legitimate, non-discriminatory reason for their action, *see Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1082–1083 (6th Cir.1994); the defendants offered evidence that Cummings was terminated for maintaining a management philosophy and health care philosophy inconsistent with the administration and that those inconsistencies created inter-office conflict. (*See* DOC. # 32, Exhs 4 at ¶ 7, 7 at ¶ 8).

Because of the defendants' showing, it was incumbent upon Cummings to produce enough evidence to enable a jury to reasonably reject the defendants' explanation as a pretext for discrimination. *Manzer,* 29 F.3d at 1083. She failed to do so. In no affidavit did she deny that she holds ideological positions on health care issues or holds a management philosophy different than those held by or advocated by the Voinovich administration, nor does she deny that she was the source of inter-office conflict. Finally, she offers no evidence of any other motivation for her discharge.