72 F.3d 129
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Judy BAKER; Mary Allison; and Bonnie Johnson, Plaintiffs-Appellees,
v.
Pat HADLEY, Columbiana County Auditor, Defendant-Appellant.
 No. 95-3038.
 United States Court of Appeals, Sixth Circuit.
 Dec. 5, 1995.
 
 Before: ENGEL, MILBURN, and NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Pat Hadley appeals the district court's order denying her motion for summary judgment based on qualified immunity in this civil rights action arising under 42 U.S.C. Sec. 1983. On appeal, the issue is whether the district court erred in determining that material issues of fact required it to deny defendant's motion. For the reasons that follow, we reverse and remand.
 
 I.
 A.
 
 2
 Defendant Pat Hadley, a Republican, was elected to the position of Columbiana County (Ohio) Auditor in November 1990. In the election, Ms. Hadley defeated the Democratic incumbent, Kent Bell. Prior to Kent Bell's term as Columbiana County Auditor, the office was held by his father, Kenneth Bell, who was also a Democrat. Plaintiffs Judy Baker, Bonnie Johnson, and Myra Allison worked in the County Auditor's Office under both Kent and Kenneth Bell. In their complaint, plaintiffs state that they had each publicly expressed their support for Kent Bell before the election.
 
 
 3
 At the time that defendant Hadley was elected, plaintiffs Judy Baker and Bonnie Johnson held the positions of office manager and chief deputy auditor, respectively. However, on December 17, 1990, prior to the date Hadley took office, both Baker and Johnson submitted resignations from their job titles but continued to work for Auditor Bell. Baker and Johnson's job responsibilities did not change after they resigned from their respective titles. Prior to taking office, Auditor-Elect Hadley received a letter from then Auditor Bell that provided Hadley with descriptions of plaintiffs' jobs. Bell described plaintiff Baker's position as "Estate Tax/Estate Inventory/License Clerk," plaintiff Johnson's position as "Settlements/Abstracts/Tax Rate Specialist," and plaintiff Myra Allison's position as "Budgetary Financial Specialist." J.A. 568. In their complaint, plaintiffs alleged that their positions were "neither policy-making nor confidential." J.A. 9. Defendant Hadley took office on March 11, 1991. That day, she requested that all employees of the Auditor's Office complete "desk audits," which required the preparer to describe his or her job duties and responsibilities. In her deposition, Hadley explained that the purpose of the desk audits was to determine who she needed to "trust and rely on." J.A. 505. Based on these desk audits and Hadley's previous dealings with the County Auditor's Office, Hadley concluded that plaintiffs were in managerial positions that required their complete trust and loyalty. Because Hadley felt that plaintiffs would not be completely loyal to her and would not adapt to her philosophy of how the County Auditor's Office should be run, Hadley discharged plaintiffs that same day, March 11, 1991.
 
 B.
 
 4
 On March 9, 1992, plaintiffs Judy Baker, Myra Allison, and Bonnie Johnson filed a three-count complaint against defendant Pat Hadley. Plaintiffs brought their claims under 42 U.S.C. Secs. 1983, 1985, and 1988, and under Ohio law. Count I alleged that Hadley violated plaintiffs' First and Fourteenth Amendment rights of freedom of speech and political affiliation by discharging them because they supported the Democratic incumbent, Kent Bell, in the election. Count II alleged that plaintiffs were terminated in violation of their First and Fourteenth Amendment rights with regard to their attempts to unionize the County Auditor's Office. Count III alleged that their termination because of their union activity also constituted wrongful discharge under Ohio law.
 
 
 5
 On April 7, 1994, defendant Hadley filed a motion for summary judgment arguing, among other things, that she was entitled to qualified immunity as to Count I of the complaint. Plaintiffs filed a motion for partial summary judgment regarding defendant's assertion of qualified immunity on May 4, 1994. On December 6, 1994, the district court granted in part and denied in part defendant's motion for summary judgment and denied plaintiffs' motion. The district court denied defendant's motion for summary judgment on qualified immunity grounds as to Count I of the complaint because it concluded that material issues of fact regarding plaintiffs' duties at the County Auditor's Office and Hadley's awareness of plaintiffs' political affiliations at the time of plaintiffs' discharge prohibited summary disposition of the qualified immunity issues.
 
 
 6
 On January 4, 1995, defendant filed a notice of appeal limited to the issue of the district court's denial of her motion for summary judgment on qualified immunity grounds. Plaintiffs filed a notice of cross-appeal, in which plaintiffs raised issues other than qualified immunity, on January 18, 1995, but this court dismissed plaintiffs' appeal for lack of jurisdiction due to its interlocutory nature.
 
 II.
 
 7
 Defendant argues that the district court erred in denying her motion for summary judgment based on qualified immunity. Specifically, defendant asserts that the district court failed to determine whether the law that plaintiffs allege that she violated was clearly established at the time she fired plaintiffs because the district court improperly found that genuine issues of material fact precluded this determination. In its order denying defendant's motion for summary judgment based on qualified immunity as to plaintiffs' claim that defendant fired them because of their political affiliations, the district court found that "[d]ischarge of nonpolicymaking, nonconfidential public employees because of political affiliation violates the First and Fourteenth Amendments to the United States Constitution." J.A. 16. However, the district court concluded that "[s]ummary judgment is not proper in this case because the parties dispute Hadley's awareness of Plaintiffs' political affiliation at the time of Plaintiffs' discharge" and because the parties dispute what the "Plaintiffs' duties [were] at the County Auditor's Office." J.A. 17.
 
 
 8
 This court has held that a denial of a claim of qualified immunity is immediately appealable. Cagle v. Gilley, 957 F.2d 1347, 1348 (6th Cir.1992) (citing Mitchell v. Forsyth, 472 U.S. 511, 530 (1985)).[1] Because application of the doctrine of qualified immunity to a particular defendant is question of law, we review the district court's determination de novo. Mumford v. Zieba, 4 F.3d 429, 432 (6th Cir.1993). It is well-established that government officials performing discretionary functions generally are shielded from personal liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Anderson v. Creighton, 483 U.S. 635, 639 (1987); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Buckner v. Kilgore, 36 F.3d 536, 539 (6th Cir.1994). Generally, in determining whether a right is clearly established, a district court must look to precedent from the Supreme Court, the Sixth Circuit, or from itself. Ohio Civil Serv. Employees Ass'n v. Seiter, 858 F.2d 1171, 1177 (6th Cir.1988). Decisions of other courts may also clearly establish the law when such determinations "both point unmistakenly to the unconstitutionality of the conduct and [are] so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional." Cagle, 957 F.2d at 1348. The Supreme Court has also instructed that when analyzing whether a right is clearly established, the court must carefully define the right at issue:
 
 
 9
 The operation of this ["clearly established law"] standard, however, depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of Harlow. Plaintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.
 
 
 10
 Anderson, 483 U.S. at 639. Accord Bills v. Aseltine, 52 F.3d 596, 602 (6th Cir.), cert. denied, 64 U.S.L.W. 3210 (1995).
 
 
 11
 In concluding that at the time Hadley discharged plaintiffs, the law was clearly established that nonpolicymaking, nonconfidential public employees could not be fired because of their political affiliation, the district court relied on the Supreme Court's decisions in Elrod v. Burns, 427 U.S. 347, 372-73 (1976), and Branti v. Finkel, 445 U.S. 507, 518-19 (1980). In Elrod, a plurality of the Court concluded that "a nonpolicymaking, nonconfidential government employee can[not] be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs." Elrod, 427 U.S. at 375. In Branti, the Court clarified the test of whether politically motivated personnel decisions violate the First Amendment and stated that "it is not always easy to determine whether a position is one in which political affiliation is a legitimate factor to be considered. Under some circumstances, a position may be appropriately considered political even though it is neither confidential nor policymaking in character." Branti, 445 U.S. at 518. Thus, the Court abandoned the labels of "policymaker" and "confidential employee," and held that the relevant issue is "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." Id. Applying this test, the Court in Branti concluded that a public defender's continued employment could not be dependent on his allegiance to the dominant political party. Id. at 519.
 
 
 12
 Courts have applied the Elrod and Branti framework for assessing the constitutionality of patronage dismissals on a case-by-case basis, examining each position individually. Mumford, 4 F.3d at 434 (stating that courts have found it impossible to identify generic categories of positions where partisan selection and rejection are permissible). In this regard, this court has analyzed the duties and responsibilities of several positions and held that they did not enjoy the right to be free from patronage dismissal. See, e.g., Mumford, 4 F.3d at 435 (chief referee); Cagle, 957 F.2d at 1349 (deputy sheriff); Faughender v. City of North Olmsted, 927 F.2d 909 (6th Cir.1991) (secretary to mayor); Monks v. Marlinga, 923 F.2d 423 (6th Cir.1991) (assistant prosecutor); Williams v. City of River Rouge, 909 F.2d 151 (6th Cir.1990) (city attorney); Christian v. Belcher, 888 F.2d 410 (6th Cir.1989) (county flood plain administrator); and Balogh v. Charron, 855 F.2d 356 (6th Cir.1988) (court bailiff). We have instructed that when analyzing "whether political considerations are appropriate in making personnel decisions for a certain position, we must examine the inherent duties of that position and the duties that the new holder of that position will perform." Faughender, 927 F.2d at 913 (emphasis added). Accord Williams, 909 F.2d at 155. Thus, "a court must examine the 'position ... itself, rather than the position as performed by [the plaintiff].' Williams, 909 F.2d at 155, when determining whether political beliefs are an appropriate requirement for the position." Faughender, 927 F.2d at 913.
 
 
 13
 In this case, the district court found that at the time Hadley fired plaintiffs, it was clearly established that nonpolicymaking, nonconfidential employees were protected from being fired because of political affiliation under the First and Fourteenth Amendments. However, the district court also found that material issues of fact regarding plaintiffs' job duties at the County Auditor's Office precluded summary judgment. Thus, the district court erred in its analysis of whether the law prohibiting patronage dismissals was clearly established at the time Hadley dismissed plaintiffs by failing to consider whether it was clearly established that employees in the particular positions at issue in this case, in light of the responsibilities inherent in those positions, were protected from patronage dismissal. See Mendez-Palou v. Rohena-Betancourt, 813 F.2d 1255, 1259 (1st Cir.1987) (holding that it is not sufficient to state generally that Elrod and Branti clearly establish that the First Amendment protects government employees from discharges based on political affiliations).
 
 
 14
 This determination is not precluded by the parties' dispute regarding plaintiffs' previous job duties at the County Auditor's Office under Auditor Bell. In Faughender, we explained that when determining whether political considerations are appropriate in making personnel decisions for a certain position, a district court should not look to the duties previously performed by the plaintiff. Instead, the court must examine the inherent duties of that position and the duties that the new hiring authority, i.e., Hadley, reasonably envisions that the holder of that position will perform. Faughender, 927 F.2d at 913. In this case, the record does not contain any evidence of what duties Hadley envisioned that the holders of plaintiffs' positions would perform. We hold that the district court erred by failing to consider the duties inherent in plaintiffs' particular positions and Hadley's plans for the employees holding such positions in determining whether the law was clearly established that plaintiffs' positions were protected from patronage dismissal at the time that Hadley discharged plaintiffs, and we shall remand these questions to the district court for further consideration.
 
 III.
 
 15
 For the reasons stated, the order of the district court denying defendant's motion for summary judgment based on qualified immunity is REVERSED, and the case is REMANDED to the district court in order that it may determine whether it was clearly established at the time defendant Hadley fired plaintiffs that public employees in plaintiffs' positions could not be fired because of their political affiliations. We, however, do not suggest or imply what the eventual outcome of this issue should be.
 
 
 
 [1]
 The Supreme Court has recently held in Johnson v. Jones, 115 S.Ct. 2151 (1995), that a defendant may not immediately appeal a district court's denial of summary judgment based on qualified immunity where the district court finds that a genuine issue of material fact precludes summary judgment. Id. at 2153. However, Johnson is not applicable to this case because, as later discussed, the district court erred in its analysis of whether the law prohibiting discharge of public employees in plaintiffs' positions because of their political affiliation was clearly established at the time of defendant's conduct