**Judy BAKER; Myra Allison; Bonnie Johnson, Plaintiffs–Appellants,**

**v.**

**Patricia HADLEY, Columbiana County Auditor, Defendant–Appellee.**

No. 97–4229.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 9, 1998.

Decided Feb. 12, 1999.

Stewart R. Jaffy (argued and briefed), Marc J. Jaffy (briefed), Stewart, Jaffy & Associates Co., L.P.A., Columbus, Ohio, for Plaintiffs–Appellants.

W. Andrew Hoffman, III (argued and briefed), Friedman & Hoffman, Cleveland, Ohio, John K. Alberty (briefed), Columbus, Ohio, for Defendant–Appellee.

Merl H. Wayman (briefed), Columbus, Ohio, for Amicus Curiae National Employment Lawyers Association.

Jeffrey R. Gordon (briefed), Cheri B. Hass (briefed), Downes & Hurst, Columbus, Ohio, for Amicus Curiae County Auditors' Association.

Before: SUHRHEINRICH, CLAY, and GILMAN, Circuit Judges.

CLAY, Circuit Judge.

Plaintiffs Judy Baker, Myra Allison, and Bonnie Johnson brought this civil rights action under 42 U.S.C. §§ 1983, 1985, 1986 and 1988, and Ohio state law, alleging that they were improperly discharged for political reasons from their jobs in the Columbiana County (Ohio) auditor's office. The district court granted summary judgment in favor of the defendant, county auditor Patricia Hadley, upon finding that Plaintiffs' positions within the auditor's office were not afforded First Amendment protection against political dismissal. Plaintiffs now appeal. For the reasons set forth below, we AFFIRM the district court's dismissal of the suit on summary judgment.

I.

A. *Procedural History*

On March 9, 1992, Plaintiffs filed an action pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988, alleging that Hadley had improperly terminated them from public employment at the Columbiana County auditor's office in violation of their rights under the First Amendment and state law. The complaint alleged improper discharge due to political affiliation, in violation of the First Amendment (Count I); improper discharge due to Plaintiffs' attempts to unionize the auditor's office, also in violation of the First Amend-ment (Count II); and wrongful discharge in violation of state law (Count III).

Following extensive discovery, Hadley filed her first motion for summary judgment. Among other things, Hadley argued that she was entitled to qualified immunity in her individual capacity as to Count I of the complaint. Although Hadley denied that she terminated Plaintiffs for political reasons, she contended that it was appropriate for her to terminate Plaintiffs because they were political patronage employees who held confidential and policy-making positions in the auditor's office.

On December 6, 1994, the district court denied Hadley's motion for summary judgment on Counts I and III, but granted Hadley's motion for summary judgment on Count II. In denying Hadley's motion for summary judgment on Count I, the court found that material issues of fact regarding Plaintiffs' duties at the auditor's office prohibited summary disposition of the qualified immunity issue. The district court held that the factual dispute over Plaintiffs' actual job duties and responsibilities prevented the court from deciding whether Plaintiffs' positions were subject to patronage dismissal.

Hadley then filed an interlocutory appeal from the district court's denial of her motion on grounds of qualified immunity. On December 5, 1995, this Court reversed and remanded. *See Baker v. Hadley*, 72 F.3d 129, 1995 WL 717029 (6th Cir.1995) (unpublished per curiam), *cert. denied*, 517 U.S. 1233, 116 S.Ct. 1876, 135 L.Ed.2d 172 (1996). We held that the district court had misapplied the law by focusing on the duties previously performed by Plaintiffs:

[W]hen determining whether political considerations are appropriate in making personnel decisions for a certain position, a district court should not look to the duties previously performed by the plaintiff. Instead, the court must examine the inherent duties of that position and the duties that the new hiring authority, *i.e.*, Hadley, reasonably envisions the holder will perform.

*Id.* at *4 (*citing Faughender v. City of North Olmsted*, 927 F.2d 909 (6th Cir.1991)). This

Court stated that the record did "not contain any evidence of what duties Hadley envisioned that the holder of plaintiffs' position would perform." *Id.* Therefore, we reversed the lower court's denial of Hadley's motion for summary judgment on the basis of qualified immunity. We remanded the matter to the district court to consider whether Hadley was entitled to qualified immunity in light of "the duties inherent in plaintiffs' particular positions and Hadley's plans for the employees holding such positions." *Id.*

The action was reactivated in the district court on January 22, 1997, and Hadley filed her second motion for summary judgment shortly thereafter. The only additional discovery consisted of affidavits that Hadley and her two top assistants submitted concerning the structure of the auditor's office and the top assistants' job duties during Hadley's tenure.

On September 22, 1997, the district court granted summary judgment in favor of Hadley. The district court, taking into consideration the inherent duties of Plaintiffs' positions and the duties as envisioned by Hadley, held that Hadley reasonably could have concluded that Plaintiffs were political patronage employees who could be discharged for purely political reasons. Accordingly, the district court granted summary judgment for Hadley in her personal capacity on Count I. In addition, the district court entered judgment for Hadley on Count I in her official capacity, holding that, as political patronage employees, Plaintiffs had no First Amendment right to be free from political discharge. Finally, the district court also dismissed without prejudice Plaintiffs' state law claim for wrongful discharge (Count III). This appeal followed.

### B. *Factual Background*

Hadley, a Republican, was elected to the position of Columbiana County (Ohio) Auditor in November 1990, defeating the Democratic incumbent, Kent Bell. Kent Bell's predecessor had been his father, Kenneth Bell, also a Democrat, and Plaintiffs worked in the auditor's office under both father and son. Plaintiffs had each publicly expressed their support for Kent Bell before the election.

When Hadley was elected, Baker and Johnson held the positions of "Office Manager" and "Chief Deputy Auditor," respectively. Allison served as the head bookkeeper. In December 1990, employees of the auditor's office, including Plaintiffs, initiated procedures to join a union in order to protect their jobs after the change of administration. In order to be eligible to join a union, Baker and Johnson submitted resignations from their job titles. However, they continued to work for Kent Bell and to perform the same responsibilities they performed under the previous job titles. Before taking office, Hadley received a letter from Kent Bell that provided her with a description of Plaintiffs' jobs. Baker was described as an "Estate Tax/Estate Inventory/License Clerk"; Johnson as a "Settlements/Abstracts/Tax Rate Specialist"; and Allison as a "Budgetary Financial Specialist."

When Hadley took office on March 11, 1991, she requested that each employee of the auditor's office complete a "desk audit," which required the employee to describe his or her job duties and responsibilities. After reviewing all of the desk audits, Hadley discharged Plaintiffs that same day. During her deposition, Hadley testified that she fired Plaintiffs because she believed that such long-time employees for the Bells would not be loyal to her. She stated that, "It was my intention to have people work for me that were loyal to me," and that, "I didn't feel that [Plaintiffs] would be able to give me the complete trust and loyalty that I would expect from them." (J.A. at 381, 413.)

Hadley states that when she came into the office, she intended to improve the efficiency and reputation of the auditor's office. According to Hadley, this required reorganizing the office. Hadley reduced the top three administrative positions that had been held by Plaintiffs to two by eliminating entirely Baker's former position of officer manager. During her first week in office, Hadley hired John Goempel as Chief Deputy Auditor (replacing Johnson), and on April 1, 1991, she hired Nancy Milliken as Head Bookkeeper/Administrative Assistant (replacing Allison). In her affidavit, Hadley states:

After studying the structure and management of my predecessor's office, I determined that it was necessary to terminate the top three (3) people in order to implement my plan for the future. I hired John Goempel and Nancy Milliken, as replacements, to become integral parts of my administration. I needed them to undertake activities [that] would control the flow of information from me to my office staff, other officials and also to the public. Additionally, I needed them to tell me what I needed to know about what was on other public officials' minds and how other officials, agency heads, and members of the public were being treated when they came into the Auditor's Office.

\* \* \* \* \* \*

I needed employees whom I could trust and who could serve as close confidants and to give me advice on pending matters. I did not need a personal secretary. I did need someone that I could rely on to communicate my policy and to implement my ideas. I wanted to improve the perception of the County Auditor's Office, both within the County and throughout the State. I felt I could not do that unless I had a strong management team. John Goempel and Nancy Milliken also serve as my confidants.

(J.A. at 519–20.)

Hadley states that she relies on Goempel and Milliken to filter out the information that is important and relay it to her; to screen phone calls and correspondence; to decide what information is released to the employees in the office and to the public; to interact with the public; to deal with other elected officials and agency officials throughout the country; and to speak accurately and professionally on her behalf. In short, she claims that "she felt it was necessary to have a top management team of her personal selection [so] that she could rely on them to communicate her policy and to implement her ideas." (Hadley Br. at 11.)

Goempel and Milliken both submitted affidavits outlining their job responsibilities. These affidavits indicate that both employees make decisions on behalf of the auditor's office; help establish policies within the office; supervise other employees in the auditor's office; represent the auditor at official meetings and in communications with the public and government officials; and control the channels of communication in the office. Moreover, either Goempel or Milliken is in charge of the office in Hadley's absence. Plaintiffs do not dispute Goempel and Milliken's statements concerning their job responsibilities.

## II.

We review the district court's grant of summary judgment *de novo. Collins v. Voinovich,* 150 F.3d 575, 577 (6th Cir.1998). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The facts at issue are to be construed in the light most favorable to the non-moving party. *See LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 378 (6th Cir.1993).

To state a § 1983 claim, Plaintiffs must prove that they were deprived of a right secured by the Constitution or the laws of the United States and that the deprivation was caused by a person while acting under the color of state law. *Flagg Bros. v. Brooks,* 436 U.S. 149, 155–57, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). The Supreme Court has held that, generally, public employees may not be terminated on the basis of their political beliefs. *See Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). However, the Court has also made clear that not all governmental employees are entitled to this First Amendment protection. "[I]f an employee's private political beliefs would interfere with his discharge of his public duties, his First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency." *Id.* at 517, 100 S.Ct. 1287. The Court explained that "party affiliation may be an acceptable requirement for some types of government employment," provided that the public employee's political beliefs are

"relevant to" the position in question. *Id.* at 517–18, 100 S.Ct. 1287.

Before *Branti*, the Court's analysis of political patronage dismissals exclusively turned on whether the government employee held a position that entailed policymaking or that required confidentiality. *See Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The Court in *Branti* modified the standard: "The ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518, 100 S.Ct. 1287.

### A.

We have held that, in determining whether political affiliation is an appropriate requirement for an employment position, courts should examine (i) the inherent duties of the position and (ii) the duties as envisioned by the incoming officeholder, rather than a particular plaintiff's job functions. "To determine whether political considerations are appropriate in making personnel decisions for a certain position, we must examine the inherent duties of that position and the duties that the new holder of that position will perform. A plaintiff's failure to meet either part of this test would cause the claim to be dismissed." *Faughender*, 927 F.2d at 913.

Plaintiffs contend that the district court erred in not looking to their particular job functions in determining whether political affiliation was an appropriate requirement for Plaintiffs' positions. Plaintiffs maintain that summary judgment was inappropriate because, viewed in the light most favorable to them, the evidence shows that their actual duties under Kent Bell were ministerial and non-policymaking.

However, this Court has consistently held that whether political considerations are appropriate in specific personnel decisions does not depend on a particular plaintiff's actual job functions. For example, in *Williams v. City of River Rouge*, 909 F.2d 151 (6th Cir. 1990), the plaintiff argued that political affili-

ation was not an appropriate requirement for his former duties as city attorney because he had worked only part-time and did not play an active role in the city's litigation. However, we refused to limit our inquiry to the plaintiff's particular job functions because such a narrow focus would unfairly limit the ability of future elected officials to establish their own style of governing. *Id.* at 154–55. Even if the previous mayor had delegated only ministerial tasks to the city attorney, we declined to adopt an approach that would "bind a later mayor to employ the City Attorney in the way that the official had been employed in the past." *Id.* at 155. Instead, we found that "the duties inherent in the position of the City Attorney indicate that a relationship of confidence and trust between the City Attorney and the Mayor and the Council is necessary to the effective performance of the job." *Id.* Accordingly, we held that the plaintiff did not enjoy First Amendment protection against political discharge.

■ This is not to say that a plaintiff's actual job functions are never relevant. The inherent duties of a particular position are not always readily apparent by the title or general job description. *See McCloud v. Testa*, 97 F.3d 1536, 1558–59 (6th Cir.1996). This is particularly true when no statute exists to define the contours and responsibilities of a particular position. *Id.* at 1558. When the inherent duties are not readily discernible, courts may look to the duties as the plaintiff actually performed them as evidence of what the position inherently entails. Accordingly, we recently observed that even though we do not normally look at the job as performed by the plaintiff, "in some cases . . . a plaintiff's actual duties may nonetheless serve as evidence of the duties inherent in the position." *Feeney v. Shipley*, 164 F.3d 311, 320 (6th Cir.1999). For example, in *Smith v. Sushka*, 117 F.3d 965 (6th Cir.1997), the plaintiff argued that she was improperly dismissed for political reasons from her position as an administrative assistant to a county engineer in Ohio. We concluded that "the job as actually performed" by the plaintiff demonstrated that the "inherent duties" of her position were political in nature, and, therefore, the plaintiff did not enjoy First

Amendment protection against patronage dismissal. *Id.* at 970–71.

### B.

■ In this case, however, we need not concern ourselves with Plaintiffs' particular job responsibilities under Kent Bell because our decision does not rest on a finding that the inherent duties of Plaintiffs' positions entailed policymaking or required confidentiality. While "[t]he two tests outlined in *Faughender,* 'the job as actually performed' and 'the job as envisioned,' are not completely separate and independent[,] . . . if one or the other test is clearly and directly applicable, the other is not independently necessary, although it may be somewhat informative." *Smith,* 117 F.3d at 970 (citing *McCloud,* 97 F.3d at 1561).

■ We agree with the district court that Plaintiffs' positions within the county auditor's office were not afforded First Amendment protection because Hadley envisioned these positions to be confidential, policymaking jobs for which political affiliation was an appropriate requirement.[1] Hadley has presented undisputed evidence that in her reorganization of the county auditor's office, her top assistants serve confidential and policymaking roles. Specifically, in the restructured office Goempel and Milliken perform such functions as speaking on Hadley's behalf at official meetings and in communications with the public and government officials; managing the office in her absence; helping to establish policies within the office and supervising other employees; controlling the lines of communication to Hadley; and exercising decision-making authority over substantive matters handled by her office.

These functions are similar to the kinds of positions this Court repeatedly has found to be subject to patronage dismissals. *See, e.g., Feeney,* 164 F.3d 311 (holding that a state department of transportation employee was subject to patronage dismissal where his duties included serving as a liaison between the director of the department and the general public and other government officials, including representing the department at meetings and conferences); *Smith,* 117 F.3d at 967–71 (holding that the administrative assistant to the county engineer could be dismissed for political reasons where she had significant interaction with county commissioners and routinely fielded their questions concerning the budget; accompanied the engineer to official meetings; supervised other employees within the engineer's office; and had the authority to approve expenditure requests within the office); *McCloud,* 97 F.3d at 1561 (holding that the administrative assistant to the County Deputy Auditor was subject to political dismissal because she controlled the lines of communication of a political actor with discretionary authority).

On the other hand, Plaintiffs' evidence, taken in the light most favorable to them, shows only that they may not have performed political or policymaking tasks when they worked under Kent Bell. This evidence does not demonstrate that their positions were "inherently" non-confidential or non-policymaking. *See Faughender,* 927 F.2d at 913. Baker and Johnson for a time held the titles of "Office Manager" and "Chief Deputy Auditor," respectively—which suggests the potential for considerable authority within the office, particularly in light of Goempel's duties as Chief Deputy Auditor under Hadley. Allison served as the head bookkeeper, which is the position currently occupied by Milliken. The record indicates that, whatever their daily functions, Plaintiffs reported directly to Kent Bell and served as his top three assistants.

This Court has expressly held that government officials may freely reorganize their departments, even if that entails transforming a previously ministerial position into a confidential or policymaking one. For example, in *Faughender,* the plaintiff was dismissed from her position as the mayor's secretary despite her claims that her actual job functions were purely ministerial and non-confidential. We upheld a grant of summary judgment for the defendant where the new

---

1. "Political affiliation" is not strictly limited to partisan alliance, but instead "includes commonality of political purpose and support of political candidacy." *Smith,* 117 F.3d at 970 n. 6 (citing *McCloud,* 97 F.3d at 1548).

mayor presented evidence that she envisioned her new secretary as a confidante, even if the plaintiff had not served such a role under the old mayor. This Court made clear that the new mayor had unlimited discretion in structuring her administration, even if the restructuring entailed transforming a previously non-political position into a political one:

> Our decision that administrative officials entrusted by the people with executive power may reorganize their departments without running afoul of *Elrod, Branti,* and *Rutan* applies to all positions, whether or not their prior duties were political. A mayor could decide to transform any non-civil service position into a position for which political considerations are appropriate provided he acts with a good faith belief that such a transformation is necessary to implement his policies.... A newly-elected administration is surely hampered in implementing its new policies if it cannot change a position's responsibilities solely because the current incumbent does not perform the new duties.

*Id.* at 914–15. *See also Williams,* 909 F.2d at 154–55 (noting that, even though the prior city attorney had served only part-time limited functions, the newly-elected mayoral administration was entitled to move in the direction of a more active and involved city attorney with its transformation of the job into a full-time position).

We imposed only one requirement on a newly-elected official seeking to transform previously ministerial positions into confidential or policymaking ones: the official must act "with a good faith belief that such a transformation is necessary to implement his policies." *Faughender,* 927 F.2d at 914. In her affidavit submitted with her second motion for summary judgment, Hadley states that her plan to improve the efficiency and reputation of the auditor's office required that her top assistants assume responsibilities traditionally deemed political, such as giving advice on policy matters, communicating with the public and other government officials, and supervising other employees in the auditor's office.

However, Plaintiffs claim that Hadley's "restructuring" of the auditor's office was not made in good faith, but rather serves as mere pretext for unlawful political discharge. Plaintiffs argue that in the initial round of discovery preceding Hadley's first motion for summary judgment, Hadley did not expressly cite office restructuring as the underlying reason for Plaintiffs' terminations. Instead, Hadley testified only that she fired Plaintiffs because she believed that such long-time employees for the Bells would not be loyal to her. Hadley did not submit the affidavits concerning restructuring until after this Court remanded the case back to the district court with express instructions to consider the inherent duties of Plaintiffs' positions and the duties as Hadley envisioned them to be. Plaintiffs maintain that this evidence indicates that Hadley's restructuring claim is simply a ploy to secure dismissal of their suit.

We disagree. The mere fact that Hadley did not initially phrase her position in the precise terms of "restructuring" or "reorganization" does not suggest that her affidavit was submitted in bad faith. We perceive no inconsistency between Hadley's deposition testimony and her subsequent affidavit. Read together, this evidence indicates that Hadley wanted "loyal" employees precisely because she envisioned her top assistants as confidants and policymakers. Moreover, Hadley's conduct upon taking office supports this view. Hadley hired Goempel as Chief Deputy Auditor during her first week in office, and she hired Milliken as Administrative Assistant/Head Bookkeeper within three weeks of taking command. The office restructuring was thus implemented immediately, while Plaintiffs did not file suit until March 1992—after Hadley's office structure had been in place for nearly a year. As a result, we find no evidence of bad faith.

Accordingly, we find that Hadley has presented sufficient evidence that, in her administration, her top assistants fill positions for which political affiliation is an appropriate requirement for the effective performance of the county auditor's office. Therefore we hold that Plaintiffs have failed to establish that they enjoyed a constitutional right to be

free from political dismissal from their positions in the auditor's office.

## III.

Because Plaintiffs have failed to establish that they were deprived of any constitutional rights, the district court properly dismissed Count I of the complaint. In addition, because we hold that no constitutional violation occurred, we need not address the issue of whether Hadley enjoyed qualified immunity from suit. *See Salehpour v. University of Tennessee,* 159 F.3d 199, 208 (6th Cir.1998) (stating that qualified immunity analysis is appropriate only where it is first found that a constitutional violation had occurred). Finally, given the absence of any viable federal claims, the district court properly dismissed Plaintiffs' state law claim for wrongful discharge (Count III). *See Musson Theatrical, Inc.. v. Federal Express Corp.,* 89 F.3d 1244, 1254–55 (6th Cir.1996).

For the foregoing reasons, we AFFIRM the grant of summary judgment in favor of the defendant, Patricia Hadley.