*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0308P (6th Cir.)
File Name: 00a0308p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

BRADLEY L. MCCLOUD, et al.,
               *Plaintiffs*,

C. CALVIN SKAATES;
TERRENCE B. COHEN; GLORIA
JEAN MORGAN; VERNON E.
HYSELL,
          *Plaintiffs-Appellees,*

       *v.*

JOSEPH W. TESTA,
       *Defendant-Appellant.*

No. 99-3551

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 92-00658—John D. Holschuh, District Judge.

Argued: August 9, 2000

Decided and Filed: September 8, 2000

Before: MERRITT, KRUPANSKY, and BOGGS, Circuit
Judges.

---

**COUNSEL**

**ARGUED:**    Patrick E. Sheeran, PROSECUTING ATTORNEY'S OFFICE FOR THE COUNTY OF FRANKLIN, Columbus, Ohio, for Appellant.  Louis A. Jacobs, Columbus, Ohio, for Appellees.  **ON BRIEF:** Douglas K. Browell, PROSECUTING ATTORNEY'S OFFICE FOR THE COUNTY OF FRANKLIN, Columbus, Ohio, for Appellant.  Louis A. Jacobs, John S. Marshall, Columbus, Ohio, for Appellees.

---

**OPINION**

---

BOGGS, Circuit Judge.  This is the second interlocutory appeal of the district court's denial of Defendant-Appellant Joseph W. Testa's motion for summary judgment on grounds of qualified immunity in this § 1983 suit for patronage dismissal.  The district court's denial of summary judgment keeps the case alive with respect to four of the original nine plaintiffs.

This court earlier held in *McCloud v. Testa*, 97 F.3d 1536, 1561 (6th Cir. 1996), that Testa was entitled to qualified immunity with respect to one plaintiff, Terry L. Tilson, and remanded for further fact-finding with respect to the remaining eight.  The district court did so, and then granted summary judgment to Testa, based on qualified immunity, with respect to plaintiffs McCloud, DeVore, Huber, and Giammarco.  It also dismissed Franklin County, Ohio and the Franklin County Board of Commissioners as defendants.  But it rejected Testa's claim of qualified immunity, and denied his motion for summary judgment, with respect to Plaintiffs-Appellees C. Calvin Skaates, Terrence B. Cohen, Gloria Jean Morgan, and Vernon E. Hysell.  It is this latter denial that is the subject of this interlocutory appeal.

We have jurisdiction to hear this appeal under 28 U.S.C. § 1291 as interpreted by the Supreme Court in *Mitchell v. Forsyth*, 472 U.S. 511 (1985), and as specifically applied by this court to the situation presented by this case in its previous opinion's extensive discussion of the jurisdictional issues. *See McCloud v. Testa*, 97 F.3d at 1544-46. We affirm the judgment of the district court and remand for a trial on the merits.

## I

The factual background of this case was set out fully in this court's 1996 opinion. What follows is a very brief summary of the relevant parts of what was known at that time. Additional facts since developed in the district court are then recited.

Testa became Franklin County, Ohio Auditor in May 1992 when his predecessor, Palmer McNeal, resigned after pleading guilty to abuse of trust. In a housecleaning move, Testa fired sixteen former underlings of McNeal's because of their connections with their former chief. Nine of them sued Testa in the original case.

The four remaining plaintiffs' positions were:

*Skaates*: Personal Property Tax Administrator; distributed, collected, and audited property tax returns.

*Cohen*: Budget and Settlement Division Administrator; audited the county's political subdivisions.

*Morgan*: Estate Tax Administrator.

*Hysell*: Estate Tax Division liaison to townships ("township liaison"); also responsible for inventorying safe deposit boxes.

Testa fired each of them because each had a "confidential and 'fiduciary' relation with McNeal." *Id.* at 1540-41. He

transferred the functions that had been performed by Cohen and Hysell to other office employees.

In remanding the case to the district court for further development of the record concerning the nature of plaintiffs' positions, this court wrote "that qualified immunity may become available to Testa with respect to any of these positions as the facts are crystallized or the relevant state/county law is developed before the district court . . . ." *Id.* at 1562. This would hinge on whether the four positions still at issue in this appeal come under any of the four categories of positions delineated by this court as falling within the "*Branti* exception" to the First Amendment right to be free from patronage dismissal. *See Branti v. Finkel*, 445 U.S. 507, 518 (1980).

With respect to Hysell in particular, we noted that "the district court will need to sort out on remand: (1) whether Hysell's function as a township liaison fell into the *Branti* exception [we noted that it "may fall into category three"]; and, (2) if so, whether Testa exceeded the scope of his protection under Branti by terminating Hysell completely rather than simply terminating his functions as township liaison." *McCloud*, 97 F.3d at 1561.

As for the positions of Skaates, Cohen, and Morgan, we held that the record was insufficient, at that point, to determine into which, if any, of the excepted categories they might fall. *Id.* at 1560.

On remand, the district court held:

that while the facts developed at trial may lead to a contrary result, on the present record the law was clearly established in May 1992 that party affiliation was not an appropriate requirement for the effective performance of the duties of the jobs held by plaintiffs C. Colvin Skaates, Terrence B. Cohen, and Gloria Jean Morgan. . . . [and] that political affiliation is not an appropriate requirement for the effective performance of Vernon E. Hysell's duties as township liaison. He has offered

clearly entitled to summary judgment on grounds of qualified immunity at this stage.

### III

For the foregoing reasons, the district court's denial of Testa's motion for summary judgment is **AFFIRMED.**

competent public official should know the law governing his conduct." *Id.* at 818-19.  However,

> On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred.  If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful.

*Id.* at 818.

As this court observed, Testa is entitled to qualified immunity only if the law is unclear, not the facts.  97 F.3d at 1556.  Although we took considerable care to elucidate the *Branti* exception for the future guidance of the district courts by delineating its possible categories, that was not to imply that the law itself was unclear; indeed, we wrote that such categories "can be specified with reasonable certainty." *Id.* at 1557.  We held that resolution of Testa's qualified immunity claim depended on further development of the factual record with respect to the positions.  But, we held, summary judgment could not be granted where the positions in question were those of "a supervisor with a glorified title who is simply performing functions over which he or she has no discretion, or no discretion of political significance . . . ." *Id.* at 1559.

As the district court repeatedly noted, there may remain trial issues as to whether the plaintiffs' positions actually do or do not fall outside the *Branti* exception.  Once those questions have been decided, if Testa is not saved by a *Branti* exception, he may still be entitled to a verdict in his favor if, based on the jury's factual findings, the court determines he could not have reasonably known he was violating a given plaintiff's rights.  *See Pouillon v. City of Owosso*, 206 F.3d 711, 718 (6th Cir. 2000) (delineating the roles of jury and judge in deciding qualified immunity).  He is not, however,

evidence  which, if credited by the jury, would establish that most of his time during the period January 1 to May 26, 1992 was spent inventorying lock boxes, a job for which political affiliation is not an appropriate requirement.

The court did find that the position of township liaison, per se, falls within the *Branti* exception.  But it held that Hysell could not be dismissed by Testa for political reasons if his liaison functions were not his primary duties:

> Under these circumstances, Hysell is entitled to an opportunity to prove at trial that his duties inventorying lock boxes for the Estate Tax Division predominated and that Testa violated his First Amendment right to political affiliation by firing him from his 30-hour-a-week job inventorying lock boxes when he had available the option of stripping Hysell of his duties as Township Liaison and continuing his part-time employment inventorying lock boxes.

## II

In our earlier hearing of this case, we discussed at length the applicable standards of review.  "We review the denial of summary judgment on grounds of qualified immunity de novo because application of this doctrine is a question of law." *McCloud v. Testa*, 97 F.3d at 1541 (citing *Mumford v. Zieba*, 4 F.3d 429, 432 (6th Cir. 1993)).

Three kinds of tie-breaking rules were then explained.  "First, when the law is unclear, public officials performing discretionary functions are entitled to qualified immunity in their individual capacities. . . . in political patronage cases [the *Branti* exception] is to be construed broadly, so as presumptively to encompass positions placed by the legislature outside of the 'merit' civil service. . . . Second, the burden of proof in qualified immunity cases in on the plaintiffs. . . . Third, the government's proffered justifications for patronage practices must satisfy strict scrutiny. . . . [I.e.,] conditioning the retention of public employment on the

employee's support of the in-party . . . must further some vital government end by a means that is least restrictive of freedom of belief and association in achieving that end, and the benefit gained must outweigh the loss of constitutionally protected rights." *Id*. at 1542.

## A.  The Four Positions

Testa argues that the positions of Skaates, Cohen, and Morgan are probably category two positions, but that they have some characteristics that might more appropriately place them in category three, namely, they acted as "confidential advisors" to, and/or controllers of the lines of communication to, category one and or two position-holders. *See* Brief for Appellant at 60.  Hysell's position, in Testa's view, is probably a category three position, but could be placed in category two by virtue of the portion of the Auditor's (category one) discretionary authority delegated to him. *See ibid.*

This court defined category two positions as those to which discretionary authority normally granted to category one position-holders (i.e., "authority with respect to the enforcement of [county] law or the carrying out of some other policy of political concern") has been delegated, or which hold such authority in their own right in lieu of category one. Category three position-holders are confidential advisors who advise category one and/or two position-holders "on how to exercise their statutory or delegated policymaking authority, or [are] other confidential employees who control the lines of communications to category one positions, category two positions, or confidential advisors." *McCloud v. Testa*, 97 F.3d at 1557.

On remand, the district discussed extensively the positions of Skaates, Cohen, and Morgan in the light of this court's instructions on the *Branti* exception.  In reviewing the denial of Testa's motion for summary judgment on grounds of qualified immunity, we view the facts favorably to the plaintiff, and as not in dispute, as must the moving defendant

*Party of Illinois*, 497 U.S. 62, 74 (1990)).  Indeed, an insistence on retention of political opponents by rearranging positions' duties, as Hysell could be taken to call for, might itself be a reverse, but equally inappropriate, use of political criteria.  For, as we wrote in *Faughender*, the Supreme Court's decision in *Rutan* "specifically holds that the use of political considerations in transferring, hiring, promotions, or recalling non-political personnel violates the first amendment."  927 F.2d at 916.

There may be a factual question as to whether Hysell was actually occupying two separate jobs, township liaison (from which he could be dismissed by Testa) and part-time deputy auditor under Morgan.  He could not properly be dismissed from the latter position, but he has no right to be formally appointed to it simply because he may have been pitching in and exercising some of its functions when its holder was absent.  Whether summary judgment for Testa is appropriate hinges on this question.  The district court found there were sufficient issues of fact to be properly determined by a jury. In that case, summary judgment for Testa was not available at this stage and was properly denied, but only with respect to Hysell's questionable position as a deputy auditor.

## B.  Testa's Claim of Qualified Immunity

Although the district court was correct in ruling that there was a genuine issue of material fact as to whether the four positions fell within the *Branti* exception, and so properly denied summary judgment on those grounds, it is not so clear that Testa was or should have been aware of the constitutional status of those positions.  Qualified immunity is unavailable only where no reasonable official  could fail to know he was acting improperly. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Given the judicial resources that have been expended in sorting out the nature of the positions at issue, it is a fair question whether Testa can be held to have violated that standard.  "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably

policies.'" *Baker*, 167 F.3d at 1020 (quoting *Faughender*, 927 F.2d at 914)). In this case, the truth of the matter is for a jury to decide. As this court observed in its earlier opinion, "[t]here is a factual dispute about Testa's motivation in terminating the plaintiffs and about his good faith intentions as to the prospective functions of the relevant positions as he envisioned them." 97 F.3d at 1543. Summary judgment was properly denied Testa at this stage.

### 5. Hysell

Testa concedes that Hysell retired in 1989 and was working as Township Liaison on a part-time basis at the time of his discharge, *See* Brief for Appellant at 52. In his other job of inventorying lock-boxes, Hysell reported to Morgan, the Administrator of the Estate Tax Division. Testa contends that this work was *de minimis* in 1991 and 1992; that Hysell only performed it when another lock-box employee was ill or on vacation, and that, according to Testa, of 1,032 lock-boxes inventoried by the Auditor's office in 1991, Hysell inventoried only 38. *See id*. at 54, 57-58.

Testa argues that if the district court were correct in suggesting that Hysell's lockbox duties should have been severable from his liaison duties, with the aim of retaining Hysell to work part time at the former, then every patronage position-holder would have the right to be retained in some new capacity involving the nonpolitical portion of his duties. *See* Brief of Appellant at 58.

Testa's argument has some merit. A political position-holder facing legitimate dismissal on political grounds has no entitlement to retention in some other, non-political position, as this court held in *Faughender*, 927 F.2d at 916. "Nowhere in either *Elrod* or *Branti*," we wrote, "does the Court intimate that a government is required to use less restrictive means than dismissal." *Ibid.* Rather, the Court has upheld dismissal when it is the least restrictive means; i.e., "the government's proferred justifications for patronage practices must satisfy strict scrutiny." *McCloud*, 97 F.3d at 1542 (citing *Elrod v. Burns*, 427 U.S. 347, 363 (1976), and *Rutan v. Republican*

also in order for the judgment to be reviewable. *See Johnson v. Jones*, 515 U.S. 304, 313-17 (1995).

### 1. Skaates

The court agreed with Skaates, on the record thus far developed, that Skaates's position was that of a mid-level manager with little or no policymaking or confidential aspects. He supervised nine or ten employees, but did not hire or fire them, was not responsible for their raises or granting leaves, and though he conducted performance evaluations of them, these were reviewed with the employees by his boss (the Auditor), not by Skaates. Testa argues that Skaates had discretionary authority in managing his employees, but the record suggests otherwise. He argues that Skaates advised the Auditor on personal property tax issues, but there is no suggestion that he was a "confidential advisor." That he trained and managed his employees, and instructed the public in personal property tax matters, does not make him the "policymaker" that Testa sees him as. *See* Brief for Appellant at 36-38. As the district court put it, if Skaates's position is subject to patronage dismissal, "then every mid-level government managerial position would fall within the *Branti* exception." The district court properly rejected the contention that Skaates's position, as it was exercised, falls within that exception.

### 2. Cohen

Cohen had been a political supporter of McNeal, and he had worked as a volunteer on McNeal's 1986 campaign. Later, as Administrator of the Budget and Settlement Division, Cohen's primary duties involved the settlement and distribution of tax monies, amounting to $755.8 million in 1991, to Franklin County's seventy-four political subdivisions. He also approved the budgets of these subdivisions. Testa argues that the inextricable connection between politics and funds, particularly in budgetary decisions, renders the job intrinsically political. Cohen maintains his functions were merely ministerial, being nondiscretionary. This issue turns, the district court noted, on

whether Cohen's testimony is credited; there is some conflicting evidence.

Since, as the district court held, there are some factual disputes concerning Cohen's functions that should be resolved at trial, Testa's motion for summary judgment, resting as it did on the argument that Cohen's position clearly falls within a *Branti* exception, was correctly denied.

### 3. Morgan

As Administrator of the Estate Tax Division, Morgan assessed and collected estate taxes, distributing 36% of them to Ohio and 64% of them to the subdivisions where the decedents resided. She had six employees, but neither controlled, nor even knew, their salaries. Four deputy auditors, reporting to her, inventoried decedents' safe deposit boxes.

Testa argues Morgan's job involved discretionary authority because she had to make judgments about what assets were taxable under state law. These were not policy judgments, however; they were rule-bound. She also worked with county auditors to apportion estate tax revenues when a decedent resided in more than one county; Testa considers such negotiations discretionary authority.

However, Morgan had no discretion as to the expenditure of monies passing through her division. And though she attended weekly Auditor's staff meetings, reporting on her division, she was never a "confidential" advisor.

The district court correctly refused to find that her position, as exercised hitherto, fell within a category two *Branti* exception.

### 4. Testa's New Plans for Those Positions

Testa argues that he envisioned the positions of Skaates, Cohen, and Morgan differently than had McNeal, and that in his new administration these positions would all be held by

confidential advisors and representatives to the public of his new policies. He relies on this court's decisions in *Faughender v. City of North Olmsted,* 927 F.2d 909 (6th Cir. 1991), and *Baker v. Hadley*, 167 F.3d 1014 (6th Cir. 1999) for the proposition that the controlling factor is how *he* envisioned these jobs, not how they were performed under the previous administration.

In *Faughender*, we upheld a new mayor's refusal to rehire her predecessor's secretary for political reasons. The previous mayor had treated his secretary as little more than a typist and filing clerk, whereas the new mayor envisioned the secretary's functions as more confidential. We agreed that the position of secretary intrinsically has that character, and that this, rather than how the previous boss treated the secretary, was decisive. *Baker* extended that reasoning to uphold the firing of three Democrats by a new Republican auditor in Columbiana County, Ohio. The terminated employees had been office manager, chief deputy auditor, and head bookkeeper. This court held that although they had not been policymaking jobs under the previous administration, the incoming auditor intended, and had the right, to transform them in that direction. Consequently, he could replace them with a new, politically loyal team.

If Testa can credibly demonstrate that he had such intentions, and convincingly show how these positions would suddenly be involved in policymaking, or as confidential advisors, he would be entitled to do the same. At present, the record is mixed, at best. For example, Testa's administrative assistant testified that Testa did not take her into his confidence, but shared confidences only with his chief deputy. Plaintiffs, accordingly, characterize Testa's claim as to how he envisioned their jobs under him as merely pretextual. *See* Brief for Appellees at 2. This court has held that pretextual reorganization will not be condoned: "We imposed only one requirement on a newly-elected official seeking to transform previously ministerial positions into confidential or policymaking ones: the official must act 'with a good faith belief that such a transformation is necessary to implement his